# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **CASE NO.:  1:14-CR-079** |
| | : | |
| | : | |
| **VS.** | : | **JUDGE BARRETT** |
| | : | |
| | : | |
| **DANA BETTS.** | : | |

## UNITED STATES' SENTENCING MEMORANDUM

Comes now the United States of America, by and through Assistant United States Attorney, Christy L. Muncy, and respectfully submits the following Sentencing Memorandum for the Court's consideration.

Respectfully submitted,

CARTER M. STEWART
UNITED STATES ATTORNEY


*/s/ Christy L. Muncy*
CHRISTY L. MUNCY (KY 88236)
221 East Fourth Street
Suite 400
Cincinnati, OH 45202
(513) 684-3711
christy.muncy@usdoj.gov

## MEMORANDUM

## INTRODUCTION

Dana Betts (Betts) entered a plea of guilty to Count 1 of the Superseding Information which charged him with Coercion and Enticement in violation of 18 U.S.C. §2422(a). The United States Probation Officer (USPO) calculated the advisory sentencing guidelines applicable to Betts's offense at a total adjusted offense level 31. Based on a criminal history category of I, the advisory sentencing guideline range in the instant case is 108-135 months. The sentencing recommendation of the USPO is a term of imprisonment of 120 months followed by a term of supervised release for Life. The United States concurs with the recommended term of imprisonment and respectfully requests the Court impose the recommended sentence. Betts engaged in a series of conduct in which he attempted to solicit an individual to find a child less than 14 years of age for him (or a "friend") to sexually abuse. He communicated his willingness to pay for nude photographs of the child as well. Betts has a history of engaging in this exact type of conduct, in addition to performing a sex act in front of a child less than 10 years of age. None of the applicable sentencing factors work in Betts' favor. The United States agrees that a term of imprisonment of 120 months, if not more, followed by lifetime supervised release is an appropriate sentence in this matter.

## ARGUMENT

**I.    SENTENCING CALCULATION**

   **A.  Statutory Maximum Sentence**

The statutory maximum sentence this Honorable Court may impose is a term of imprisonment of 240 months (20 years), a fine not to exceed $250,000, supervised release of not less than five years and up to Life, and a mandatory $100 special assessment.

### B. Advisory Sentencing Guidelines Calculation

While district courts are no longer required to follow the Sentencing Guidelines, they must first consider the applicable advisory guidelines range. *Gall v. United States*, 552 U.S. 38, 49 (2007). "The Guidelines should be the starting point and the initial benchmark." *Id.* The advisory guidelines range, as calculated in the PSR is as follows: base offense level of 24 pursuant to U.S.S.G § 2G1.3(a)(4); add two levels for the use of a computer or an interactive computer service pursuant to U.S.S.G § 2G1.3(b)(3); add eight levels because the offense involved a minor who had not attained the age of 12 years old pursuant to U.S.S.G § 2G1.3(b)(5); reduce three levels for acceptance of responsibility pursuant to U.S.S.G. §§ 3E1.1(a) and 3E1.1(b). In sum, the PSR contemplates an advisory guideline range of 108-135 months (total adjusted offense level 31, criminal history category I). There are no outstanding objections by either party to the application of the advisory guideline calculations.

## II. ANALYSIS OF §3553(a) FACTORS

Taking into consideration the totality of 18 U.S.C. §3553(a) factors, a sentence of 120 months is sufficient but not greater than necessary to achieve the sentencing goals as contemplated by Congress and as outlined by the United States Sentencing Commission. Betts came to the attention of law enforcement after local authorities received information that Betts had been utilizing an online advertising network for the purpose of soliciting prostitution. Betts expressed his desire to find a child to have sexual encounters with and indicated his willingness to pay for nude photographs of a child. Betts specifically asked for a child between the ages of three and fourteen years, indicating "the younger, the better."

The United States acknowledges there are mitigating factors involved in this matter. However, these factors are not of the weight and degree which should warrant a departure below the advisory guideline range, much less the complete departure that is being requested by Betts.

### A.     The kinds of sentences available and the sentencing range.

The statutory maximum penalty the Court may impose is a period of incarceration of 240 months (20 years).  The advisory sentencing guideline range established for Betts' offense is 108-135 months, which falls in Zone D of the sentencing table.  Under the guidelines, probation is not authorized.

### B.     The nature and circumstances of the offense and the history and characteristics of the defendant.

The nature and circumstances of the offense is despicable, to say the least.  Betts located a person using online advertising for the purpose of arranging sexual encounters.  Shortly after communication had been established, Betts began to solicit the person to find a child between the ages of three and fourteen for himself and a "friend" to have sex with.  Betts told the person the younger the minor was, the more money would be offered.  He requested pornographic photographs of the child be taken in exchange for money.  He also asked whether his "friend" could "mess around" with a nine month old infant.  *See* PSR §§ 17-31.

Betts informed agents he had been contacting prostitutes on backpage.com for a period of between six months to one year.  He told agents he would ask the prostitutes, in exchange for payment, to arrange for him to have sexual encounters with minors.  He said he would purchase minutes for his mobile phone at Walmart.

The communications between Betts and the original complainant are alarming.  They are extremely graphic in that there remains no doubt as to Betts's intention.  Below are some of the

earlier text exchanges between the complainant (identified as "CW") and Betts (who referred to himself as "Dan"):

- May 27, 2014

    Dan to CW: *Hay do you want to do this or not*

    CW to Dan: *yes but I don't where ti find what you are looking for I could do the both of you*

    Dan to CW: *Hay call us*

    CW to Dan: *I cant do it im sorry not comfortable doing that it could be my little girl*

    Dan to CW: *Hay call me*

- May 29, 2014

    CW to Dan: *I just want to know. …..what is it…..thier face while they cry and beg you to stop*

    CW to Dan: *The fact that they are pure and untouched*

    CW to Dan: *The dirty thought that it is wrong or the tiring of innocents and mental fuck you are giving that little girl for life*

    CW to Dan: *Im literally just curious about what your friend addiction is with all that I want to understand it*

Betts had told the person that he and a "friend" wanted to set up a sexual encounter with a minor child. In the beginning of their contact, the two exchanged text messages, which are reflected in the above exchanges. Later, however, CW agreed to record calls between she and Betts. Portions of those exchanges are as follows:

- June 6, 2014

    Dan: *Yeah, if it shows anything.*

    CW: *If it shows, it's just the bikinis, I mean…*

Dan: *Ohhhh....Shit. I'll pay you a little bit, but, but don't know how much.*

CW: *Okay.*

Dan: *But, he was, but he was wanting nude, or them fooling around with one another, or something like that.*

---further in the conversation---

Dan: *(UI) for the kid.*

CW: *Yeah, she's 12. Is that too old?*

Dan: *No. He said 14 down to three.*

CW: *Fourteen down to three. Okay, well um...*

Dan: *I mean if you want to do it that's fine, if you don't, that's fine too.*

CW: *Okay, okay, well, I know that, I know that. I'm just seeing um...*

---further in the conversation---

Dan: *And is the, is the girl a virgin?*

CW: *Um, no.*

Dan: *Oh, she's not? Has she started her...*

CW: *That's what you wanted, a virgin?*

Dan: *Well, if that's all you can find, yeah.*

CW: *For right now that's all I can find. I might be able to find something younger.*

Dan: *Okay. But uh, if you get her, you know you get your money either way you work this, you get your money.*

CW: *Yeah, as long as I get my money, I don't care.*

Dan: *How old is the other girl?*

CW: *I don't know, I am just going to look around. Like I said...*

Dan: *Well, I'm, I was talking about uh, the baby. The one nursing.*

CW: *Oh. The baby's like nine months old. She's been breastfeeding for a while.*

Dan: *Oh. Okay. Okay. Now you get the pictures of that.*

---further in the conversation---

Dan: *Uh, if you get, let us know something here in the short time. Can you get pictures of the girl?*

CW: *Of the, I can probably get pictures of the nine month old.*

Dan: *Okay. Spread out shows everything?*

CW: *It's a little girl.*

Dan: *Yeah.*

CW: *Huh?*

Dan: *Spread out shows everything?*

CW: *I mean what do you want exactly? Do you want exactly? Do you want the, the private parts and everything?*

Dan: *Huh?*

CW: *What do you want pictures of? I can probably get pictures of the nine month old. Nobody will know about that.*

Dan: *Okay, what about the 12?*

CW: *The 12 year old? Yeah, I can probably do that too. What exactly do you want from the 12 year old? I mean what do you want her to look like? Do you want her to be naked? Do you want her...*

Dan: *Naked.*

CW: *...to have some lingerie on?*

Dan: *Both.*

CW: *Both? Okay. Do you want um, like her pussy open or?*

Dan: *Yeah.*

    CW:    *Where it shows everything?*

    Dan:    *Okay. And she, if you...*

    CW:    *I mean are you interested in the anal?*

    Dan:    *Yeah, everything.*

    CW:    *Everything? Okay.*

    Dan:    *Uh, if you get her nursing her mom. That would be great. A picture of it. You know, 'cause you're making...*

    CW:    *Okay. Alright, um....*

    Dan:    *...money off the pictures too.*

- June 12, 2014

    Dan:    *Did you mention this to the mother, he wants the 12 year old suck momma's tit?*

    CW:    *...sucking on her tit?*

    Dan:    *Yeah.*

    CW:    *Yeah, yeah. I told her everything. I told her like it's pretty much the threesome thing and you know?*

    Dan:    *And she's cool with it?*

    CW:    *That's what you wanted?*

    Dan:    *Yeah.*

    CW:    *Yeah, she's, they're both down for it, they're like yeah.*

    Dan:    *Okay, and then, you said something about you had a eight year old or nine year old, something like that?*

    CW:    *Nine month old.*

    Dan:    *Huh? No, no it was like a seven year old.*

    CW:    *Uh, no.*

Dan: *You said something like that.*

CW: *I had another one that's like 11 or 12 years old that's a virgin. But I don't know if that's going to be possible or not. I'm gonna uh, leery about approaching that situation.*

Dan: *Well you need to work on that too.*

CW: *Okay.*

Dan: *The younger the better. Younger she is the more money to make.*

CW: *Okay.*

Dan: *So. And uh, I'll be back in Cincy Sunday. I'm taking off tonight.*

---further in the conversation---

Dan: *Unless something comes up. Then I could back pretty quick.*

CW: *Okay.*

Dan: *And um, is the 12 year old on birth control?*

CW: *And what, what?*

Dan: *Is the 12 year old on birth control?*

CW: *Um, I don't know, I don't think so. I don't think she is on anything.*

Dan: *Okay, 'cause there is a possibility she will get knocked up and if she does, you will get more money on that.*

---further in the conversation---

Dan: *On the pictures, on the pictures, they gotta be good ones, if you know what I mean?*

CW: *Okay, yeah. Yeah.*

Dan: *They gotta show everything.*

CW: *Um, like do you want the, do you want the, the private parts everything?*

Dan: *Yep. Yep.*

> CW: *Right?*
>
> Dan: *Yep.*
>
> CW: *Uh.*
>
> Dan: *Is that a problem?*
>
> CW: *No, I mean I am working on that. With the nine month old, um, it might be kind of easier to get because you know, they can't tell anything.*
>
> Dan: *Uh huh. And is it a problem for him to mess around with her? Little bit?*
>
> CW: *Uh, I dunno, I am gonna see what I can do. She was down for the picture because the money because she needs it. She needs it. So.*

More content of the communications between CW and Betts is set forth in the affidavit in support of a criminal complaint. *See* 1:14-mj-459. The type of behavior Betts was engaging in as evidenced by the above communications has no place in a decent society. Betts clearly had intentions of sexually abusing children if given the opportunity. It is implicit upon the government to make sure he does not have any such opportunities.

The United States recognizes that Betts has suffered what appears to be a rather tragic childhood. He has been abused and neglected almost his entire life. The abuse has been at the hands of his family and his classmates. He has limited social skills and borderline intellectual capacity. However, tragic as it may be, it does not grant Betts a license to commit criminal acts himself. His conduct puts children in harms way and cannot be ignored.

**C. The need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and provide the defendant with needed educational, medical, and correctional treatment.**

In order to adequately address the seriousness of Betts's offense, this Honorable Court must impose a significant term of imprisonment. A sentence of 120 months would adequately reflect the seriousness of Betts's offense and would be sufficient but not greater than necessary

to achieve the sentencing goals of Congress and the Sentencing Commission. Betts has requested this Court essentially impose no sentence upon him for his criminal behavior.

In an effort to resolve the matter of sentencing by agreement, the United States communicated with the probation officer about whether the Exit Program requested by Betts would be an appropriate placement for him in lieu of incarceration. The short answer is simple: no, it is not. As far as the United States has been able to discern, the Exit Program is not a residential sex offender treatment facility. It would be nothing more than speculation to say Betts would be required to remain in the Exit Program for any period of time. Given the history Betts presents with, such speculation puts the community at risk.

The Bureau of Prisons (BOP) offers both residential and non-residential sex offender treatment programs. However, it would be incumbent upon Betts to agree to participate in those programs and abide by their rules. In addition, BOP offers multiple other programs which would hopefully give Betts a way to gain some useful life skills and prepare him for when he attempts to reintegrate himself into society.

Betts has engaged in criminal conduct involving minors on three other occasions aside from the instant offense. In spite of this, his criminal history category remains I. To reward this repeated criminal conduct further by imposing no further incarceration would not serve as adequate punishment and would almost be an encouragement to others to act similarly. The sentence requested by Betts would undermine the sentencing goals and directives. In sum, to minimize his conduct further would be to validate it.

    **D.    To afford adequate deterrence to criminal conduct and protection of the public from further crimes of the defendant.**

A sentence of 120 months, if not higher, would afford adequate deterrence to similar criminal conduct. The Sentencing Commission submitted its report on Federal Child

Pornography Offenses. Among others, the Commission concluded that "*all* child pornography offenses are extremely serious because they both perpetuate harm to victims and normalize and validate the sexual exploitation of children." Sentencing Commission Report on Federal Child Pornography Offenses, p. 311. The Commission further noted that "non-production child pornography offenses normalize and validate the sexual exploitation of children, which contributes to the sexual abuse of new victims." Id., p. 312. Here, Betts encouraged and solicited the production of child pornography involving multiple minors. It would not act as an adequate deterrent to impose a sentence below the advisory guideline range.

Whether or not Betts will commit future crimes is a consideration for this Honorable Court when considering protection of the community. The best way to predict Betts's future is to look to his past. There, the Court will find a person who has committed multiple offenses involving minors, performing sex acts in front of them and attempting to solicit people to arrange for him to engage in sex acts with them. His past actions have victimized children. There is nothing about Betts which gives the United States any comfort that he will not offend against a child if given an opportunity. In fact, quite the opposite exists.

**E.    The need to avoid unwarranted sentencing disparities among similarly situated defendants.**

The most effective way to ensure equitable sentences between defendants who commit similar offenses is to sentence within the advisory guideline range. Each child exploitation offender presents a sentencing court with unique facts, both to the facts of the case and the background and circumstances of the individual who stands charged with the offense. Some prove to be more dangerous than others because of chats they have engaged in, or the type of child pornography they seek or encourage others to produce. In this matter, Betts is someone whose conduct was far more egregious than the "typical child pornographer" (whatever that may

be). Betts sought out a real child to abuse. And, he did not just seek one child, he sought multiple. He offered an increased amount of money for a younger child. Had his plan come to fruition, a child as young as 9 months old would have been the victim of a production offense and a child as young as 3 years old would have been molested. Those facts alone warrant a significant sentence of incarceration.

### III. THERE IS NO COMPELLING REASON TO DEVIATE FURTHER FROM THE ADVISORY GUIDELINE RANGE

The Sixth Circuit had held that the "farther the judge's sentence departs from the guidelines sentence … the more compelling the justification based on factors in section 3553(a) must be." *United States v. Poynter*, 495 F.3d 349, 352 (6th Cir. 2007). Here, there is no compelling justification for departing or deviating farther from the advisory guideline range, and Betts has offered no Sixth Circuit authority for their request.

Both the sentencing guidelines and the United States Code discourage downward departures for offense involving minor victims. *See,* Chapter 5, Park K of the Guidelines Manual and 18 U.S.C. §3553(b)(2)(A)(ii). The commentary to U.S.S.G. § 5K2.0 explains that the standard for a downward departure in child crimes and sexual offenses differs from the standard for other departures. The policy statement includes a requirement "that any mitigating circumstances that form the basis for such a downward departure be affirmatively and specifically identified as a ground for downward departure." *See* Commentary to §5K2.0, Scope of Policy Statement 4(B)(1).

Pursuant to U.S.S.G. §5H1.3, "mental and emotional conditions may be relevant in determining whether a departure is warranted, if such conditions, individually or in combination with other offender characteristic, are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines." The USPO recognized this factor before making a

sentencing recommendation and found the aggravating factors outweigh any mitigating ones. As noted in the PSR in paragraph 138, "When examining the history and characteristics of the defendant, a pattern emerges in which he displays aggressive behavior with no remorse or guilt." The only thing to distinguish Betts from the typical case is that he may pose a greater danger.

## CONCLUSION

Betts's offense conduct, combined with his history and personal characteristics, demand a sentence that is in alignment with the one recommended in the PSR. For the reasons stated above, the United States respectfully recommends the Court sentence Betts to a term of imprisonment of at least 120 months followed by lifetime supervised release.

Respectfully submitted,

CARTER M. STEWART
UNITED STATES ATTORNEY

*/s/ Christy L. Muncy*_____
CHRISTY L. MUNCY (KY 88236)
221 East Fourth Street
Suite 400
Cincinnati, OH 45202
(513) 684-3711
christy.muncy@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing, United States' Sentencing Memorandum, was served, via ECF, upon counsel for defendant on this the 10rd day of August, 2015.

*/s/ Christy L. Muncy*_____
CHRISTY L. MUNCY (KY 88236)
Assistant United States Attorney